IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| PERRY FINCH and others similarly situated, | ) | C/A No.: |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| LOWE'S HOME CENTERS, LLC formerly known as LOWE'S HOME CENTERS, INC., | ) ) | **(Jury Trial Demanded)** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff, by and through his attorneys, alleges the following in support of his claim and those similarly situated (the "Class" as defined below) in this collective and class action against the Defendant Lowe's Home Centers, LLC ("Lowe's"):

## PARTIES

1. Plaintiff, Perry Finch, is a citizen and resident of the County of Lexington, State of South Carolina, and is a sole proprietor operating Twin Builders which provides installation services exclusively for Lowe's in South Carolina, most specifically for Lowe's stores located in Richland and Lexington Counties.

2. Defendant Lowe's Home Centers, LLC, is a limited liability company formed under the laws of North Carolina and registered to do business in the State of South Carolina, including but not limited to, in Richland and Lexington Counties.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C.A. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy, for each plaintiff and for each member of the proposed Class, exceeds the sum of $75,000, exclusive of interest and costs.

4. This Court also has subject matter jurisdiction over this controversy pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and pursuant to 29 U.S.C.A. § 216(b) (FLSA).

5. Venue is proper in this judicial district because the course of conduct by Lowe's relating to the named Plaintiff and others similarly situated and giving rise to the claims asserted herein occurred, in substantial part, in this judicial district, where Lowe's conducts substantial business.

**FACTUAL BACKGROUND**

6. Plaintiff and the Class incorporate by reference herein all preceding allegations of this Complaint.

7. Lowe's is a national retailer of construction and home improvement products and goods with approximately fifty (50) stores in South Carolina.

8. Plaintiff files this action on behalf of himself and all other similarly-situated workers that provided installation services ("Installers") who were or are misclassified by Lowe's as independent contractors rather than the required classification as employees so that they would be entitled to all of the benefits and protections that employees are entitled to by law and by company policies.

9. Lowe's, as part of its sales operation, markets to its customers that the Installers are Lowe's trained, approved and qualified and will accept and perform work orders, details, cost

PO's, and change orders directed by the Lowe's sales team through Installed Sales Contracts produced, directed, and controlled by Lowe's.

10. Lowe's products sold through the "Contract for Installation Services" include, but are not limited to, doors, including storm doors, windows, kitchen cabinets, flooring, and ceiling fans ("Installed Products").

11. In some, but not all, cases, Lowe's has a Contract for Installation Services with the Installers that are a part of this Class and provides the Installers with *Lowe's Installer Performance Standards*, a *Lowe's Independent Contractor Reference Guide*, and the *Lowe's Installer Standards of Courtesy and Professionalism.*

12. While claiming the Installers are independent contractors, Lowe's requires them to strictly follow the *Lowe's Statement of Business Ethics* set forth for Lowe's employees.

13. Plaintiff has been a Lowe's Installer in South Carolina for more than twenty (20) years, almost exclusively providing installation for Lowe's customers and performing all millwork and installation of Lowe's windows and doors, including storm doors.

14. Lowes has informed the Plaintiff and others that they must priorities Lowe's work and not work for any competitors.

15. Plaintiff has provided these services for multiple stores in the Midlands region ("Region 3") and was awarded and received from Lowe's the Region 3 Installer Award for 2014 and 2016.

16. For twenty (20) years, Plaintiff, almost exclusively, has worked as a sole proprietor through his tradename, Twin Builders, and he has performed every aspect of the job requirements in order to serve as a Lowe's Installer.

17. Beginning at 5:00 A.M. almost daily, until approximately 11:00 PM, Plaintiff accesses his online portal which was developed and required by Lowe's for the Installers' assignment of work orders, and receives notice of the Lowe's jobs to which he has been assigned and instructions on when to pick up the products to be installed at a Lowe's store for use on the jobs.

18. The Plaintiff is required to use the same portal to provide updates on the completion status of Lowe's jobs and to track payment and other matters involving each work order.

19. As mandated by Lowe's, Plaintiff communicates with Lowe's customers within forty-eight (48) hours of the notification by Lowe's of its contract with the customer for installation services and the work order assigned to Plaintiff.

20. As mandated by Lowe's, Plaintiff meets with the customer to confirm the specifications and products identified by the Lowe's sales team, as well as the costs quoted by the Lowe's sales team, before he picks the product up from Lowe's and delivers it to the home site for installation services.

21. Plaintiff performs the tear down of old windows or doors and installs the newly sold Lowe's product himself before returning home to work through the Lowe's online portal to manage new and old work orders, take or return Lowe's customers phone calls, and ensure paperwork or data entries are complete.

22. For approximately twenty (20) years, Plaintiff has performed these services almost exclusively for Lowe's.

23. For the past twenty (20) years, Plaintiff worked five (5) or six (6) days a week while spending more than sixty (60) hours a week performing services for Lowe's.

24. As of the filing of this lawsuit, Plaintiff still performs this work for Lowe's at least five (5) days a week and still works in excess of fifty (50) hours a week for Lowe's.

25. All the allegations set forth herein are from his extensive and exclusive work for Lowe's as an Installer and his knowledge that similarly situated Installers are providing services as required by Lowe's in the same manner and under the same written and unwritten directives from Lowe's management underlying this action.

26. Lowe's intentional misclassification of the Installers as independent contractors is illustrated by a myriad of requirements Lowe's consistently imposed on the Class which evince substantial and continuing control by Lowe's over the method and manner of the performance of labor and services by the Class, namely:

    A. Prohibiting Installers to work for Home Depot and other competitors;

    B. Requiring Installers to accept all jobs posted for them by Lowe's in order to avoid the penalty of fewer jobs and less desirable installation work;

    C. Requiring all Installers to log in to the Lowe's portal each day to accept assignments, update existing jobs, respond to customer issues, and confirm invoicing and payment;

    D. Setting all rates for Installers that Lowe's charges customers through the Lowe's sales system;

    E. Prohibiting Installers to negotiate, raise, adjust, or set any rates for installation services with the customers;

    F. Prohibiting Installers from quoting a job to a customer and requiring that a Lowe's sales team member contact and quote the job, with the Installer merely confirming the measurements after the customer has already paid for the work to be performed;

    G. Prohibiting Installers from billing the customer directly for their work and requiring that Lowe's bill the customer for the Lowe's product and the labor of the Installer;

    H. Prohibiting Installers from collecting payment from the customer;

I. Taking a portion of the labor costs billed to the client for the services performed by Installers and paid to Installers at the rates set exclusively by Lowe's;

J. Prohibiting Installers from purchasing products for the job and adding an upcharge for the service in accordance with industry standard;

K. Requiring Installers to miss a day of work and attend regular Lowe's unpaid meetings and training;

L. Requiring Installers to purchase from Lowe's at full retail cost the collateral materials (e.g., finishing nails, fasteners, and caulk) necessary for the Lowe's jobs;

M. Requiring Installers to attend day-long training seminars from Lowe's vendors at their own costs;

N. Requiring Installers to input all paperwork for completing the jobs in the intranet portal;

O. Requiring Installers to wear and pay for shirts with the Lowe's logo on the jobsite (See **Exhibit A**);

P. By requiring Installers to post Lowe's signs on the jobsite of the customer (See **Exhibit B**) and prohibiting them from posting their own company's signs on the jobsite;

Q. Requiring Installers to wear Lowe's hats on the job;

R. Requiring Installers to introduce themselves and hold themselves out to customers as Lowe's Installers;

S. Requiring Installers to always promote Lowe's installation services;

T. Prohibiting Installers from making derogatory comments about Lowe's;

U. Requiring Installers to give priority to Lowe's jobs;

V. Requiring Installers to increase their work with the Lowe's Installed Sales program;

W. Requiring Installers to contact Lowe's customers within 48 hours of being assigned the job;

X.  Requiring Installers to complete jobs within five days of the Lowe's product being received;

Y.  Promoting Lowe's installation work to drive work to other Installers;

Z.  Requiring Installers to leave Lowe's "Leave Behind" brochures in customers' homes;

AA. Requiring Lowe's authorized forms to complete the job;

BB. Prohibiting Installers from doing additional work for customers without Lowe's permission;

CC. Requiring that all leads obtained by the Installer on the job are the property of Lowe's (e.g., installation for a neighbor that sees the Installer performing installation services on a Lowe's job);

DD. Requiring that all leads obtained on the job are referred to the Lowe's Installation office and funneled through the Lowe's sales team for quotes;

EE. Prohibiting all leads that are not part of the Lowe's installation program from being performed by the Installer;

FF. Withholding any payment on a subsequent job if a claim of defective work is made against the Installer on a previous job;

GG. Prohibiting the Installer to subcontract work assigned to the Installer by Lowe's unless Lowe's preapproved the subcontractors, performed background checks on them and approved them for use on Lowe's projects; and,

HH. Requiring Installers to allow, without notice, a Lowe's corporate employee to perform an on-site inspection of their jobs to check whether Installers were wearing Lowe's apparel, had Lowe's signage in the yard and were comply with Lowe's policies and procedures and quality standards.

27. Lowe's labels its Installers as operators of independent businesses but maintains control of and directs their work while enjoying the benefits of the appearance of a Lowe's employee to customers.

28. Lowe's bad faith and willful misclassification of the Installers is shown by its transparent attempts to conceal the Installers' true status in the following manner:

7

      A.      In or about 2014, following a misclassification action in another state, Lowe's stopped distributing Lowe's apparel with a logo that said "Lowe's Installation Services" to Installers and required that when Installers purchased new shirts the logo on the apparel said, "Lowe's Installation Services, Independent Contractor." (See the attached photographs of the two exemplary shirts attached hereto as **Exhibit A**). None of the controls and directives required of the Installers as described herein changed notwithstanding the new attempted classification; and

      B.      In 2014 when Plaintiff, doing business as Twin Builders, won the Region 3 Installer award, the trophy was engraved, "Premier Installer" and contained the year, Twin Builders, Region 3, with only the Lowe's logo at the bottom of the trophy. In 2016, when Plaintiff won the same award, the trophy was engraved with, "Premier Service Partner" and contained the year, Twin Builders, Region 3, with the Lowe's logo at the bottom of the trophy and with the words "Independent Service Provider" engraved thereunder. (See the attached photographs of the two trophies attached hereto as **Exhibit C**). None of the control and directives required of the Installers as described herein changed.

29. Lowe's knew and knows it is misclassifying the Installers as independent contractors and has made cosmetic attempts to cover its controlling policies and directives.

30. The Installers perform functions that are an essential part of Lowe's normal and growing business operation.

31. They do business in the company's name with directives from Lowe's.

32. They rarely, if ever, engage in installation services other than Lowe's assigned jobs.

33. They constitute an integral part of the company's business under its substantial control.

34. They have no substantial proprietary interest beyond their investment in their trucks and tools.

35. They have no significant entrepreneurial opportunity for gain or loss.

36. Lowe's business model for installation services is to shift certain capital costs to the Installers without providing them proper wages, employee protections by law and by company policies and benefits and the independence to engage in other entrepreneurial opportunities.

37. Throughout the time that Plaintiff and other persons similarly situated were employed by Lowe's, Lowe's consistently had the right to control and did in fact exercise substantial control over the manner in which Plaintiffs and others similarly situated performed their labor and services for Lowe's.

38. Therefore, Lowe's was legally required to adhere to the relevant statutory provisions of the South Carolina Payment of Wages Act ("SCPWA") and the Fair Labor Standards Act ("FLSA").

39. Although Lowe's was legally required to adhere to the relevant statutory provisions of the SCPWA and the FLSA, Lowe's repeatedly violated the provisions of those statutory provisions, by:

   A. Requiring Plaintiff and other similarly-situated Installers to pay for various costs and expenses which were employment related, and which, pursuant to the SCPWA, plaintiffs and others similarly situated should not have been required to pay;

   B. By failing to provide other employment-related benefits to this Plaintiff, and others similarly situated, that were legally required by Lowe's to pay because their status in fact was that of employee of Lowe's; and,

   C. By making the nonexempt Plaintiff and other similarly-situated Installers under FLSA work a workweek longer than 40 hours, and not compensating Plaintiff at a rate of one and one-half times the regular rate at which he was employed, for the hours worked in excess of 40 in any one week.

40. Under the SCPWA, Plaintiff and others similarly situated are entitled to reimbursement of the total amount of costs and expenses, which they were improperly required

to pay by Lowe's, and which Lowe's should have instead paid for them, because they were employees in fact of Lowe's. Plaintiffs and others similarly situated are entitled to such reimbursement for a minimum period of three years prior to the filing of this action.

41. In addition, Plaintiff and others similarly situated are entitled to payment of penalties and interests as well as attorney's fees and treble damages as provided by the SCPWA (S.C. Code Ann. § 41-10-80).

42. Plaintiff and all others similarly situated employees are entitled to damages equivalent to Lowe's paid time off, including vacation, holidays, sick and volunteer time and maternity and parental leave from Lowe's wrongfully classifying them as independent contractors rather than as employees, as well as attorney's fees and costs pursuant to the SCPWA (S.C. Code Ann. § 41-10-80) as well as any other relief to which they are entitled in law.

43. Plaintiff and others similarly situated under FLSA seek unpaid compensation, which should have been paid pursuant to applicable provisions of the FLSA, including overtime pay, liquidated damages, and attorney's fees and costs pursuant to 29 U.S.C.A. § 216(b), as well as all other relief to which they are entitled to in law.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

44. Plaintiff and the Class defined below incorporate by reference herein the prior allegations in the Complaint.

45. Plaintiff, individually and on behalf of the Class defined below ("the Class"), bring this class and collective action lawsuit under the SCPWA and the FLSA, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

46. Maintenance of this case as a Class action under Rule 23 of the Federal Rules of Civil Procedure is highly appropriate given the simplicity and commonality of the pertinent issues.

47. The Plaintiff Class in this action is defined as: All persons and installation companies and/or their successors ("Installer") who at any time as of the filing of this action and three years preceding the filing performed installation services through a Lowe's Contract for Installation Services or performed such work without a contract in the State of South Carolina in excess of Forty (40) hours a week (meaning exclusive of time off for vacation and/or illness).

48. Lowe's liability can be established with proof of a set of facts common to all of the Class members because Lowe's policies are uniformly applied to all South Carolina stores in the Lowe's system.

49. All Class members have sustained economic damages resulting from violations of the SCPWA and the FLSA.

50. The questions of law and or fact common to the members of the Class predominate over any questions affecting only individual Class members; therefore, a Class action and collective action are superior to other available methods for the fair and efficient adjudication of this controversy.

51. The representative Plaintiff will fairly and adequately protect the interests of the Class because the claims of the representative Plaintiff are typical of the claims of the Class members and because the representative Plaintiff has retained competent and experienced class and collective action counsel who have successfully represented clients in complex, collective and class litigation.

52. Upon information and belief, the Plaintiff estimates the total number of Class members is in excess of 200 persons or entities, thus satisfying the "numerosity" requirement. Joinder of all class members is impracticable.

53. In addition, the prosecution of separate actions by or against the individual members of the Class would create a risk of:

   A. Inconsistent or varying adjudication with respect to individual members of the Class, which would establish incompatible standards of conduct for Lowe's and other similarly situated companies; and,

   B. Adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

54. The members of the defined Class have not shown any interest as of yet in individually pursuing the prosecution of the defense in separate actions.

55. There is no other lawsuit pending in the State of South Carolina apparent to the knowledge of Plaintiff, relating to the claims at issue, by any other Class member.

56. It is clearly desirable to concentrate the litigation and the claims of this named Plaintiff and the members of the Class in one forum so that the claims can be adjudicated efficiently in one action.

57. A class and collective action is proper under Rule 23 of the Federal Rules of Civil Procedure for the SCPWA (class) and FLSA (collective) because the concerted action is superior to other available methods for the fair and efficient adjudication of these claims.

58. There are no significant difficulties likely to be encountered in the management of this Class action by this Court.

## COUNT I
## VIOLATIONS OF SOUTH CAROLINA PAYMENT OF WAGES ACT (SCPWA)

59. Plaintiff and the Class incorporate by reference herein all preceding allegations of this Complaint.

60. Plaintiff and others similarly situated worked for Lowe's with the clear understanding and agreement by Lowe's that their compensation would be consistent with all applicable laws, including federal and state wage and hour laws.

61. Defendant is an "employer" as defined by the S.C. Code Ann § 41-10-10(1).

62. S.C. Code Ann § 41-10-10(2) defines Wages as "all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract."

63. Defendant owes Plaintiff "wages" as defined in S.C Code Ann. § 41-10-10 (2) of the SCPWA, to compensate them for labor rendered to Defendant, as promised to Plaintiff and as required by law.

64. Pursuant to the SCPWA, "An employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law. . . ." S.C. Code Ann. § 41-10-40(C).

65. Plaintiff and the Class were wrongfully classified by Lowe's as independent contractors, rather than employees, under the South Carolina Payment of Wages Act (SCPWA).

66. Under the SCPWA, as employees, Plaintiff and the Class are entitled to the repayment of the total of all costs and expenses they paid during which time they were employees of Lowe's and payment of overtime wages for the relevant period of time for which

they may lawfully recover. Further, the Class is entitled to Lowe's paid time off, including vacation, holidays, sick and volunteer time and maternity and parental leave as well as ordinary expenses incurred in furtherance of their work for Lowe's that should have been covered by Defendant, including but not limited to, vehicle costs and maintenance, equipment and supplies and such other necessary costs related to Lowe's work.

67. Defendant has failed to pay Plaintiff all wages due, as required by SCPWA.

68. Pursuant to S.C. Code § 41-10-80(C), Plaintiff is entitled to recover in this action an amount equal to three times the full amount of their wrongfully withheld wages (overtime), plus costs and reasonable attorneys' fees.

## COUNT II
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (FLSA)

69. Plaintiff incorporates by reference herein all preceding allegations of this complaint.

70. The Class also individually bring an action under the FLSA, pursuant to 29 U.S.C.A. § 216(b), because they were wrongfully classified by Lowe's as independent contractors, rather than employees under the Fair Labor Standards Act.

71. Lowe's violated the FLSA rights of the class, all non-exempt employees under FLSA, 29 U.S.C.A. §§ 201, *et seq.*, which remedies wide-spread and pervasive violations of the wage provisions of the FLSA and deprived the Plaintiff of lawful wages.

72. Lowe's violated the statutory requirements of 29 U.S.C.A. § 207 of the Fair Labor Standards Act (FLSA) by providing work to wrongfully classified employees which required a workweek longer than 40 hours, and not compensating the nonexempt Class of one and one-half times the regular rate for hours worked in excess of 40 in any one week.

73. Lowe's violated the statutory requirements of 29 U.S.C.A. § 207 of the FLSA by requiring a workweek longer than 40 hours, and not compensating the nonexempt employees who had been wrongfully classified of one and one half times a proper rate of pay for the hours they worked in excess of 40 hours in any one week.

74. Under the FLSA, because Lowe's violated 29 U.S.C.A. § 207, the nonexempt Class, as wrongfully classified employees, seek unpaid overtime compensation, an additional equal amount as liquidated damages, and attorney's fees and costs pursuant to 29 U.S.C.A. § 216(b), as well as all other relief to which they are entitled to in law.

## RELIEF REQUESTED

WHEREFORE, Plaintiff and the Class pray for judgment against Lowe's as follows:

A. An order certifying the Class claims for damages under the South Carolina Payment of Wages Act be certified as a class action under Fed. R. Civ. P. 23(b)(3);

B. Declaratory relief declaring the Class employees of the Defendant;

C. Injunctive relief enjoining the Defendant from requiring payment and requiring repayment of any costs and expenses paid by the Class;

D. Actual damages to Plaintiff and the Class to the full extent;

E. A judgment in favor of Plaintiff and the Class for all penalties and liquidated, treble and punitive damages allowed by law;

F. Award of prejudgment interest to Plaintiff and the Class;

G. Attorney's fees and costs allowed by law; and,

H. Such further relief as the court deems proper under the circumstances.

        LAW OFFICE OF TODD ELLIS, P.A.

        By: s/Todd R. Ellis
        Todd R. Ellis, Esq. SC Federal Bar No. 06488
        7911 Broad River Road Suite 100
        Irmo, South Carolina 29063
        (803) 732-0123
        todd@toddellislaw.com

        BLAND RICHTER, LLP

        Eric Bland, Esq. SC Federal Bar No. 5472
        Ronald L. Richter, Esq. SC Federal Bar No. 6264
        Scott Mongillo, Esq. SC Federal Bar No. 7436
        1500 Calhoun Street
        Columbia, South Carolina 29201
        (803) 256-9664
        ericbland@blandrichter.com
        ronnie@blandrichter.com
        scott@blandrichter.com

        SARVIS LAW, LLC

        Bryn C. Sarvis, Esq. SC Federal Bar No. 10478
        3424 Augusta Highway
        Gilbert, South Carolina 29054
        (803) 785-5525
        bsarvis@sarvislaw.com

        *Attorneys for the Plaintiff*

Irmo, South Carolina
August 18, 2020