**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Perry Finch and others similarly situated, | ) | |
| | ) | Civil Action No. 3:20-cv-02981-JMC |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Lowe's Home Centers, LLC, formerly | ) | |
| known as Lowe's Home Centers, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Perry Finch filed this putative class action seeking damages from Defendant Lowe's Home Centers, LLC ("Lowe's"), formerly known as Lowe's Home Centers, Inc., for classifying Plaintiff and other similarly-situated workers who provided installation services ("Installers") as independent contractors rather than employees and for failing to give Installers typical employee benefits. (ECF No. 1 at 2 ¶ 8, 9 ¶ 39B.) Specifically, Plaintiff asserts claims against Lowe's for violating the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to -110 (West. 2021), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219. (ECF No. 1 at 9 ¶ 34–10 ¶ 43.)

This matter is before the court on Lowe's Motion to Dismiss and to Compel Arbitration of Plaintiff's Claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, and Rules 12(b)(1), 12(b)(3), and/or 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 9.) For the reasons stated below, the court **GRANTS** Lowe's Motion to Dismiss and to Compel Arbitration of Plaintiff's Claims. (*Id.*)

## I.    RELEVANT BACKGROUND TO PENDING MOTION

Plaintiff has worked "almost exclusively" as a Lowe's Installer in South Carolina for more

than twenty (20) years. (ECF No. 1 at 3 ¶ 13, 4 ¶¶ 22–23.) Over the course of that time, Plaintiff

signed multiple new contracts with Lowe's. (ECF No. 30 at 9:22–10:6.) Plaintiff alleges these

contracts—before the contract at issue in the instant case—were hand-signed in person during

meetings with the District Sales Manager. (*Id.* at 10:7–16, 11:8–10.)

In 2014, Lowe's emailed Installers a "Contract for Installation Services" ("the Contract"),

which Plaintiff electronically signed on December 10, 2014. (ECF Nos. 19-1 at 27; 32.) The

Contract includes the following arbitration clause:

> **BINDING ARBITRATION, WAIVER OF JURY TRIAL & WAIVER OF CLASS ACTION ADJUDICATION. Most questions or complaints are resolved informally. Independent Contractor agrees that, if it has a question or complaint the Independent Contractor will meet with the Field Service Manager to discuss and resolve the issue and will escalate any issues that cannot be resolved to the Regional Field Service Manager, prior to instituting binding arbitration. Lowe's and Independent Contractor agree that binding arbitration provides a simple, cost effective method to resolve disputes quickly. Independent Contractor and Lowe's therefore agree that any type of dispute in any way related to Independent Contractor's relationship with Lowe's, including allegations of breach of contract, personal or business injury or property damage, fraud and violation of federal, state, or local statutes, rules, or regulations (including any claims arising out of state or federal labor laws), shall be resolved by binding arbitration conducted by a single arbitrator under the current applicable rules, procedures and protocols of JAMS, Inc. ("JAMS") or the American Arbitration Association ("AAA"), as may be amended from time to time, in Charlotte, North Carolina (unless otherwise required by law), or such other mutually agreeable location. The most current version of the JAMS and AAA rules are currently available at: http://www.jamsadr.com and http://www.adr.org, respectively. Lowe's also will provide Independent Contractor with hard copies of the JAMS and AAA rules upon request. The parties agree that if JAMS or AAA are unable or unwilling to arbitrate the matter, the parties will agree upon a single arbitrator with a nationally recognized arbitration firm to arbitrate the matter. Either party may demand arbitration. The arbitrator will provide a written explanation of the award so long as such requirements are consistent with the rules and procedures of the selected arbitration association then in effect. The parties agree that the arbitration agreement contained in this paragraph eighteen (18), including the interpretation and enforceability thereof, shall be governed by the Federal Arbitration Act. If for any reason the Federal Arbitration Act does not apply, then the arbitration agreement contained in this paragraph eighteen (18) shall be governed by the laws of the State of North**

Carolina, without regard to the choice of law rules of any state. Additionally, Independent Contractor agrees to cooperate with Lowe's and participate, if necessary, in any arbitration proceedings between Lowe's and its Customers.

Unless otherwise prohibited by law, each party shall be responsible for his/her or its own filing fees and will bear equally the fees and expenses of the arbitrator. Where fee and expense sharing is prohibited by law, Lowe's will pay all filing fees and arbitrator fees and expenses in accordance with applicable law.

Binding arbitration means Lowe's and Independent Contractor both waive: (1) the right to a jury trial; (2) the right to bring an action in any court; and (3) the right to seek relief in any other forum or from any other agency. Lowe's and Independent Contractor agree, however, that only a court of competent jurisdiction may interpret the arbitration agreement contained in this paragraph eighteen (18) and resolve challenges to its validity and enforceability. The arbitrator shall have no jurisdiction or power to make such determinations. With the exception of this paragraph eighteen (18), only the arbitrator shall have authority to interpret, enforce and adjudicate the remaining provisions in this Contract (as well as any other disputes arising out of the parties' relationship).

The arbitration agreement contained in this paragraph 18 does not prohibit those limited circumstances under which either Independent Contractor or Lowe's find it necessary to seek emergency or temporary injunctive relief, such as a preliminary injunction or a temporary restraining order, from a court that may be necessary to protect any rights or property of such party pending the establishment of the arbitral tribunal or its determination of the merits of the controversy.

Lowe's and Independent Contractor agree that there shall be no right or authority for any dispute to be heard or arbitrated on a class action basis, as a private attorney general, or on a basis involving disputes brought in a purported representative capacity on behalf of the general public, or any (other) persons similarly situated to either party ("Class Action Waiver"). THIS MEANS THAT ALL DISPUTES BETWEEN INDEPENDENT CONTRACTOR AND LOWE'S SHALL PROCEED IN ARBITRATION SOLELY ON AN INDIVIDUAL BASIS, AND THAT THE ARBITRATOR'S AUTHORITY TO RESOLVE ANY DISPUTE AND TO MAKE WRITTEN AWARDS WILL BE LIMITED TO CLAIMS BETWEEN INDEPENDENT CONTRACTOR AND LOWE'S ALONE. The parties agree that this Class Action Waiver is a material term to the arbitration agreement contained in this paragraph eighteen (18). Accordingly, should this Class Action Waiver be deemed unenforceable for any reason, then the arbitration agreement contained in this paragraph eighteen (18) shall be deemed void.

(ECF No. 19-1 at 22 ¶ 18 (emphasis in original).)

This arbitration clause is much more comprehensive than those in prior contracts between Lowe's and its Installers. (*Compare id.*, *with id.* at 10 ¶ 16.) Plaintiff alleges Lowe's made changes to the arbitration clause in the Contract and "dump[ed] [it] on" the Installers as a reaction to a class action settlement in 2014 in California where Lowe's paid $6.5 million to independent contractors for causes of action almost identical to the ones brought in the instant case. (ECF Nos. 16 at 20–21; 32.)

On August 8, 2018, Plaintiff filed a Collective and Class Action Complaint alleging Lowe's misclassified the Installers as independent contractors rather than employees. (ECF No. 1.) As a result of the misclassification, Plaintiff alleges that Installers are "entitled to damages equivalent to Lowe's paid time off, including vacation, holidays, sick and volunteer time and maternity and parental leave," as well as reimbursement of all costs and expenses which Lowe's improperly charged Installers. (*Id.* at 10 ¶ 42.)

Lowe's filed the instant Motion on October 1, 2020, arguing that the arbitration clause in the Contract between the parties is valid and that, pursuant to the FAA, the clause mandates the arbitration of Plaintiff's claims. (ECF Nos. 9, 9-1.)

## II.    JURISDICTION

This court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states . . . ." 28 U.S.C. § 1332(a). Plaintiff is a citizen of South Carolina. (ECF No. 1 at 1 ¶ 1.) Plaintiff alleges, without objection from Lowe's, that Lowe's is a citizen of North Carolina. (*Id.* at 1 ¶ 2; *see also* ECF No. 19-1 at 17 ¶ 1 ("Within this Contract the term 'Lowe's' shall refer to Lowe's Home Centers, LLC, *a North Carolina limited liability company*.")

(emphasis added).) The court thus finds there is complete diversity of citizenship between the parties. Plaintiff has also pleaded that the amount in controversy exceeds $75,000.00. (ECF No. 1 at 1 ¶ 3.) Lowe's has made no assertion to the contrary. (ECF Nos. 9, 19.) Accordingly, the court finds the jurisdictional minimum is met, and the court has original jurisdiction over this case.

### III.    LEGAL STANDARD

The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "The FAA's policy of favoring arbitration augments ordinary rules of contract interpretation and requires all ambiguities to be resolved in favor of arbitration." *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 682–83 (4th Cir. 2020) (citations and internal quotation marks omitted).

The FAA dictates that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Grounds for revocation include "contractual formation defects such as lack of mutual assent and want of consideration," *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999), and "generally applicable contract defenses, such as . . . unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

For the court to hear a challenge attempting to revoke an arbitration agreement, "[t]he grounds for revocation must relate specifically to the arbitration clause and not just to the contract as a whole." *Hooters of Am., Inc.*, 173 F.3d at 938 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967)). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 440 (2006).

Whether a valid arbitration agreement exists is a question of state contract law. *First*

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In the present case, South Carolina law governs questions regarding contract formation, and North Carolina law governs questions regarding contract interpretation.[1] Under South Carolina law, the requirements for the formation of a contract are offer, acceptance, and valid consideration. *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003).

Where (1) a valid arbitration agreement exists and (2) the claims fall within the scope of the arbitration agreement, the court has "no choice but to grant a motion to compel arbitration." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002); *see also Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015). The party resisting arbitration bears the burden of showing that the arbitration agreement is unenforceable. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

While the FAA requires a district court to stay judicial proceedings where claims are

---

[1] The Contract was uncontestedly formed in South Carolina. (ECF Nos. 16 at 10; 19 at 8 n.1; 32.) However, the Contract's "Choice of Law" provision reads: "this Contract shall be governed by and interpreted in accordance with the laws of the State of North Carolina." (ECF No. 19-1 at 25 ¶ 25.) The parties agree that North Carolina law applies *only* to questions of contractual interpretation and *not* formation. (ECF Nos. 16 at 17; 19 at 8 n.1.) The parties agree that South Carolina law applies to questions of contract formation, (ECF Nos. 16 at 9; 19 at 8 n.1), relying on South Carolina's rule of *lex loci contractus*, applying the law of the place where the contract was made. *See Dongxiao Yue v. Chun-Hui Miao*, No. 3:18-cv-3467, 2019 WL 5872142, at *7 n.7 (D.S.C. June 27, 2019), *report and recommendation adopted*, No. 3:18-cv-3467, 2019 WL 6130473 (D.S.C. Nov. 19, 2019) ("Where [the question is one of] the formation of a contract . . . South Carolina courts apply the substantive law of the place where the contract at issue was formed."); *O'Briant v. Daniel Constr. Co.*, 305 S.E.2d 241, 243 (S.C. 1983); *Livingston v. Atl. Coastline R. Co.*, 180 S.E. 343, 345 (S.C. 1935) ("[C]ontracts are to be governed as to their nature, validity and interpretation by the law of the place where they are made, unless the contracting parties clearly appear to have had some other place in view."). Regardless of whether the parties have applied the law correctly, the court will follow the Fourth Circuit's lead and respect the wills of the parties as to the choice(s) of law and apply South Carolina law to questions of contract formation and North Carolina law to questions of contract interpretation. *See Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc.*, 807 F.3d 553, 563 n.11 (4th Cir. 2015) (applying Maryland law in spite of Texas choice of law provision where both parties agreed Maryland law applied and relied on Maryland law in their arguments).

covered by written arbitration agreements, *see* 9 U.S.C. § 3, the United States Court of Appeals

for the Fourth Circuit (the "Fourth Circuit") has held that "*dismissal* is a proper remedy when all

of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana*

*Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (emphasis added).

## IV.    ANALYSIS

Lowe's argues that the court should dismiss the action and compel arbitration pursuant to

a valid and enforceable arbitration agreement. (ECF No. 9.) Plaintiff does not dispute the scope of

the Contract's arbitration agreement. (ECF Nos. 16, 32.) Instead, Plaintiff argues the arbitration

agreement is unenforceable for want of consideration and because it is unconscionable.[2] (ECF No.

16 at 14–23.)

### 1.    Consideration

Lowe's argues that the parties' mutual promise to arbitrate is sufficient consideration to

create a valid arbitration agreement. (ECF No. 19 at 12–14.) Under South Carolina law, a mutual

promise to arbitrate does constitute sufficient consideration to underpin an arbitration agreement.

*O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (citing *Rickborn v. Liberty Life*

*Ins. Co.*, 468 S.E.2d 292, 300 (S.C. 1996)).

Here, the terms of the arbitration clause of the Contract demonstrate a mutual promise to

arbitrate between Plaintiff and Lowe's. The clause, by its language, clearly binds both parties:

"*Independent Contractor and Lowe's* therefore agree that any type of dispute . . . shall be resolved

by binding arbitration . . . ."; "Binding arbitration means Lowe's and Independent Contractor *both*

---

[2] Originally, Plaintiff additionally claimed that he did not sign the Contract and thus never assented to the arbitration agreement. (ECF No. 30 at 24:3–7, 25:4, 30:5.) During a June 14, 2021 motion hearing, however, Plaintiff's counsel informed the court that Plaintiff no longer contested Lowe's assertion that Plaintiff signed the Contract. (ECF No. 32.)

waive . . . ."; and "*Lowe's and Independent Contractor* agree . . . ." (ECF No. 19-1 at 22 ¶ 18 (emphasis added).) The arbitration clause, in and of itself, evidences a mutual promise to arbitrate.

Plaintiff claims that the Contract's modifications clause[3] renders Lowe's promise to arbitrate illusory. (ECF No. 16 at 15–16.) Therefore, Plaintiff contends, Lowe's did not bind itself and there is no mutual promise to arbitrate to function as consideration therefor. (*Id.*)

As a threshold matter, Lowe's argues that the question of whether its promise to arbitrate is illusory is a question for the arbitrator, and not the court. (ECF No. 19-1 at 12 n.4.) Specifically, Lowe's asserts that the challenge is not specific to the arbitration agreement because the modifications clause in the Contract allows Lowe's to modify the entire contract, rather than just the terms of arbitration. (*Id.*)

---

[3] The modifications clause reads, in full:

    19. <u>MODIFICATIONS</u>.

    a)   Lowe's shall have the right to modify or amend this Contract and will endeavor to notify Independent Contractor of such modifications or amendments by e-mail, mail, facsimile, or any Site(s) that Lowe's may currently maintain or may designate in the future. Independent Contractor's acceptance of Orders and performance of Installation Services shall be deemed acceptance of such modifications or amendments by Independent Contractor, whether communicated previously or not, at which time, without further action by the parties, such modifications or amendments shall bind the parties. Independent Contractor specifically agrees that all such modifications or amendments accepted by Independent Contractor pursuant to this paragraph shall be incorporated into and subsumed within this Contract as an integral part hereof. Matters subject to modification or amendment in the manner set forth herein may include, but are not limited to, Training Qualifications (Appendix A), labor cost charges and the Independent Contractor's Schedule (Appendix B), Lowe's Installer Guide (provided by Field Service Manager), insurance requirements (Appendix C), Lowe's Vendor Code of Conduct (Appendix D).

    b)   No oral changes in the terms of this Contract or oral approval of deviations from performance under this Contract shall be permitted.

(ECF No. 19-1 at 23–24 ¶ 19.)

Courts in the Fourth Circuit are split on whether an illusory promise challenge to an arbitration clause based on a modifications clause, which allows modification of the *entire* contract, is a challenge to the arbitration clause itself—and thus under the court's purview—or a challenge to the entire contract—and thus under an arbitrator's purview. *Compare Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 594 (D. Md. 2013) (finding the challenge specific to the arbitration agreement where the arbitration clause was a provision in the employee manual and modifications clause stated that "the policies . . . in [the employee manual] are subject to change"), *with Cox v. Time Warner Cable, Inc.*, No. 3:12-cv-3333, 2013 WL 5469992, at *2 n.2, *4 (D.S.C. Sept. 30, 2013) (finding the challenge one to the entire contract where the modifications clause stated the defendant "may change [the] Customer Agreement[]" and "may also change the prices" but made no mention of any specific provisions).

The modifications clause in the present case explicitly lists specific provisions of the Contract that are subject to modification and explicitly states that the list is nonexhaustive. (ECF No. 19-1 at 23–24 ¶ 19.) The arbitration clause is a provision in the Contract not listed by the modifications clause. (*Id.*) The court finds the modifications clause expressly stating that such a non-enumerated provision is subject to modification directly applies to the arbitration clause. Thus, Plaintiff's illusory promise challenge is one to the arbitration agreement itself and is for the court to decide.

The court finds the modifications clause does not render Lowe's promise to arbitrate illusory because the clause does not give Lowe's unfettered discretion. Any modifications Lowe's makes to the provisions of the Contract do not come into effect until those modifications are accepted by the Installers through their "acceptance of Orders and performance of Installation Services." (ECF No. 19-1 at 23 ¶ 19.) While Plaintiff is correct that an Installer may "accept" a

modification without notification, that does not change the fact that any changes must be accepted before becoming binding. Lowe's, "as master of the offer," has the right to prescribe the manner of acceptance, *e.g.*, *Benezra v. Zacks Inv. Research., Inc.*, No. 1:11-cv-596, 2012 WL 1067559, at *5 (M.D.N.C. Mar. 30, 2012) (quoting 2 Williston on Contracts § 6:2 (4th ed.)), and, to that end, the Contract specifically states that the Installers' acceptance will be effective "whether [the modifications were] previously communicated or not[.]" (ECF No. 19-1 at 23 ¶ 19.) While Plaintiff can argue that this may not be particularly fair, *see* Substantive Unconscionability discussion *infra*, the fact that modifications must be accepted before taking effect means the promise of Lowe's to arbitrate is not illusory.

Therefore, there is valid consideration to support the arbitration agreement.[4]

### 2. Unconscionability

To prove the arbitration clause was unconscionable under North Carolina law, Plaintiff bears the burden of showing both procedural unconscionability and substantive unconscionability. *Wilner v. Cedars of Chapel Hill, LLC*, 773 S.E.2d 333, 336 (N.C. Ct. App. 2015). "While both elements of unconscionability must be present, a court may rule that a contract is unconscionable 'when the contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa.'" *Torrence v. Nationwide Budget Fin.*, 753 S.E.2d 802, 807 (N.C. Ct. App. 2014) (quoting *Tillman v. Com. Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008) (plurality opinion) (internal quotation marks omitted)).

"An inquiry into unconscionability requires that a court 'consider all the facts and circumstances of a particular case,' and '[i]f the provisions are then viewed as so one-sided that

---

[4] Alternatively, Lowe's argues that Plaintiff's continued at-will employment constitutes sufficient consideration for the arbitration agreement. (ECF No. 19 at 13–14.) Because the parties' mutual promise to arbitrate is sufficient and dispositive, the court need not reach this issue.

the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable.'" *Tillman*, 655 S.E.2d at 369 (plurality opinion) (quoting *Brenner v. Little Red Sch. House Ltd.*, 274 S.E.2d 206, 210 (N.C. 1981)).

### A. Procedural Unconscionability

Procedural unconscionability involves "bargaining naughtiness in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." *Wilner*, 773 S.E.2d at 336 (internal quotations omitted). In *Tillman*, the leading North Carolina case on the unconscionability of arbitration agreements, the North Carolina Supreme Court's plurality found procedural unconscionability based on five (5) factors: (1) the plaintiffs were rushed through signing the contract; (2) the closing officer indicated where to sign; (3) there was no mention of the arbitration clause at the closing; (4) the defendants admitted they would have refused to complete the deal rather than negotiate terms of the arbitration agreement; and (5) "the bargaining power between [the] defendants and [the] plaintiffs was unquestionably unequal in that [the] plaintiffs [were] relatively unsophisticated consumers contracting with corporate defendants[.]" 655 S.E.2d at 370 (plurality opinion).

Many of the factors present in *Tillman* are missing from the instant case. Plaintiff makes no allegation that he was rushed through signing the Contract. (*See* ECF Nos. 16, 32.) To the contrary, the internal audit proffered by Lowe's shows that the email sent to Plaintiff's account containing the Contract was opened (and, presumably, read) twice before the Contract was signed. (ECF No. 19-1 at 15.)

Plaintiff points to the email the Installers received from Lowe's accompanying the Contract which listed many changes made to the contract from previous iterations but did not mention the changes to the arbitration agreement. (ECF No. 32.) However, Plaintiff's argument that there was

no mention of the arbitration agreement in the email—and that he would have been unfairly surprised by any change to it—is undermined by the fact that: (1) Plaintiff had sufficient time to read the contract and inform himself of its contents before signing it, and (2) the entire arbitration clause is printed in all bold font and large sections of it are in all capital letters. *See Westmoreland v. High Point Healthcare Inc.*, 721 S.E.2d 712, 718 (N.C. Ct. App. 2012) ("Where the terms and conditions of an agreement are clear and unequivocal, and are further highlighted in bold and capital typeface, a party cannot come into court and complain that an agreement is unconscionable because she failed to read it."); *Raper v. Oliver House, LLC*, 637 S.E.2d 551, 556 (N.C. Ct. App. 2006) (finding the fact that the arbitration agreement was "in bold face type" weighs against a finding of unconscionability); *see also Nationwide Mut. Ins. Co. v. Edwards*, 312 S.E.2d 656, 661 (N.C. Ct. App. 1984) ("Persons entering contracts . . . have a duty to read them and ordinarily are charged with knowledge of their contents."); *Setzer v. Insurance Co.*, 126 S.E.2d 135, 139 (N.C. 1962) ("[W]here no trick or device had prevented a person from reading the paper which he has signed or has accepted as the contract prepared by the other party, his failure to read when he had the opportunity to do so will bar his right to reformation."). Accordingly, the court rejects this argument.

The instant matter is also different from *Tillman* because Lowe's has made no admission that it would have rather refused to complete the deal than negotiate with any Installers. Plaintiff's own statements also undermine his argument that he lacked any meaningful choice. Plaintiff admits in his Response that Installers were not resigned to either signing the Contract or being terminated from their business relationship with Lowe's. (ECF No. 16 at 20.) Instead, Installers had the choice "to seek further information" about the Contract. (*Id.*)

Perhaps most importantly, the inequality of bargaining power present in *Tillman* is not

present in the instant case. To be sure, the bargaining power between Lowe's, a corporation, and an individual Installer is not equal—and Plaintiff makes this point (ECF Nos. 16 at 20–21, 23; 32)—but this alone does not support a finding of procedural unconscionability. *See Westmoreland*, 721 S.E.2d at 717 (holding that since "[t]here [will] nearly always be some degree of 'inequality of bargaining power'" in any contract, "bargaining inequality alone generally cannot establish procedural unconscionability"). "Whether there is bargaining inequality must be evaluated on a case-by-case basis," *id.*, and in determining if there is an inequality of bargaining power sufficient to evidence procedural unconscionability, courts must consider the sophistication level of the party alleging unconscionability. *See Tillman*, 655 S.E.2d at 370 (finding bargaining power "unquestionably unequal" because "plaintiffs [were] relatively unsophisticated consumers contracting with corporate defendants"); *Mansfield v. Vanderbilt Mortg. & Fin., Inc.*, 29 F. Supp. 3d 645, 654 (E.D.N.C. 2014) (finding an inequality of bargaining power where plaintiff was "an unsophisticated consumer contracting with . . . corporate entities"). In the present case, Plaintiff is quite the sophisticated party: Plaintiff testified that he has studied mediation and labor law, served as a mediator for the Department of Labor Licensing and Regulation, and categorized himself as a businessperson when he ran for South Carolina State Senate. (ECF No. 30 at 28:6–24.) While not a licensed labor attorney, Plaintiff is presumably a sophisticated party. Accordingly, the court finds this argument to be without merit.

All of Plaintiff's remaining arguments are unavailing. Plaintiff argues that the manner in which the Contract was presented to the Installers "is the essence of unfair surprise," (ECF No. 16 at 20), because the Contract was sent to Installers via electronic communication directly from Lowe's corporate, and prior policy changes came from the District Sales Manager in person and on paper. (*Id.* at 19–20, ECF No. 32.) However, Plaintiff provides no authority to support the

argument that a switch to electronic contracts is in any way unconscionable. Quite the opposite, North Carolina's legislature has explicitly recognized the validity of electronic contracts, *see* N.C. Gen. Stat. Ann. § 66-317(b) ("A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation."), and has instructed that the paper-versus-electronic contract distinction "is irrelevant." *See* § 66-317, cmt. 1. As this argument is based solely on this distinction, the court must reject it.

Plaintiff lastly contends that procedural unconscionability is evidenced by Lowe's failure to disclose to Installers the 2014 class action settlement between Lowe's and independent contractors in California that Plaintiff alleges was the catalyst for the implementation of the Contract and its updated arbitration clause. (ECF No. 16 at 20–21.) While Plaintiff may be correct that the settlement was Lowe's motivation for drafting a more comprehensive arbitration agreement, Plaintiff fails to show that Lowe's had any obligation to include the settlement information along with the Contract to the Installers. The California settlement was public information, reported by myriad websites six (6) months before Plaintiff signed the Contract on December 10, 2014. *See, e.g.*, Richard J. Reibstein, Lisa Petkun and Andrew Rudolph, *$6.5 Million Independent Contractor Misclassification Settlement Between Lowe's And Its Home Improvement Contractors*, Mondaq (May 29, 2014), https://www.mondaq.com/unitedstates/employment-litigat ion-tribunals/316982 (last visited July 9, 2021); Anne Bucher, *Lowe's Agrees To Class Action Settlement With Independent Contractors*, Top Class Actions (June 2, 2014), https://topclassac tions.com/lawsuit-settlements/lawsuit-news/29287-lowes-agrees-class-action-settlement-indepen dent-contractors/ (last visited July 9, 2021); Meredith S. Campbell, *Lowe's Takes A Blow With Seven Figure Settlement Of Independent Contractor Misclassification Suit*, Lexology (June 4, 2014), https://www.lexology.com/library/detail.aspx?g=d9f8c196-0f34-4aeb-a8bb-6fb176244cee

14

(last visited July 9, 2021). Based on the foregoing, the court is not persuaded that the failure of Lowe's to inform Installers of the California settlement is procedurally unconscionable.

Therefore, upon consideration, the court finds that Plaintiff has failed to meet his burden to establish procedural unconscionability.

### B. Substantive Unconscionability

Substantive unconscionability "refers to harsh, one-sided, and oppressive contract terms." *Wilner*, 773 S.E.2d at 337. The terms must be "so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Id.* (quoting *Brenner*, 274 S.E.2d at 210).

Plaintiff first argues that the arbitration clause is substantively unconscionable because it lacks consideration. (ECF No. 16 at 21.) In addition to this contention being inaccurate, *see* Consideration discussion *supra*, this is an improper substantive unconscionability argument. Substantive unconscionability attacks are challenges to the terms of a contract, not a contract's consideration.

Plaintiff next argues that the arbitration clause is "decidedly one-sided and lacks mutuality" because Plaintiff believes the Contract's indemnification clause would require Plaintiff to indemnify Lowe's on the claims Plaintiff asserts in the instant case. (ECF No. 16 at 21.) Simply put, Plaintiff reads the indemnification clause incorrectly. By the language of the clause,[5] Plaintiff

---

[5] The indemnification clause, in pertinent part, reads:

14. <u>INDEMNITY</u>.

Independent Contractor agrees to defend, indemnify and hold harmless Lowe's, the affiliates and subsidiaries of Lowe's, their respective directors, officers, employees, shareholders, agents, attorneys, assigns and successors in interest, and Customers, from and against any and all claims, damages, demands, actions, causes of action, liabilities, losses, assessments, costs and expenses (including, but not limited to,

is not required to indemnify Lowe's for the claims he brings in the present case. The indemnification clause—as quoted in Plaintiff's Response—requires Installers to indemnify Lowe's for "expenses . . . arising out of or resulting from any actual or alleged . . . (g) reclassification or attempt to reclassify *Independent Contractor's employees or subcontractors* as employees of Lowe's, including . . . obligations relating to violation of employment discrimination statutes or regulations, the Fair Labor Standards Act . . . ." (*Id.*; ECF No. 19-1 at 21 ¶ 14 (emphasis added).) The section of the indemnification clause Plaintiff complains of only requires him to indemnify Lowe's if Plaintiff hired an employee or subcontractor and *one of those employees or subcontractors* sought to bring the claims Plaintiff presently brings against Lowe's. Plaintiff makes no argument to suggest that the indemnification clause, when read correctly, is substantively unconscionable. Thus, he fails to meet his burden for proving so.

Plaintiff further argues that the indemnification clause coupled with the class action waiver in the arbitration clause is substantively unconscionable because the costs would "preclude[] [plaintiffs] from effectively vindicating their rights in the arbitral forum." (ECF No. 16 at 22–23 (internal marks omitted).) However, because Plaintiff misunderstands the indemnification clause, this argument is simply that the class action waiver alone prevents Plaintiff from effectively

---

attorneys' fees), arising out of or resulting from any actual or alleged . . . (g) reclassification or attempt to reclassify Independent Contractor's employees or subcontractors as employees of Lowe's, including, without limitation, (i) any tax or other liability (including interest and penalty) resulting from Lowe's failure to pay, deduct or withhold income taxes, FICA taxes, or Federal Unemployment Tax Act taxes, or amounts pertaining to workers' compensation; or (ii) obligations relating to violation of employment discrimination statutes or regulations, the Fair Labor Standards Act, the IRCA or the Occupational Safety and Health Act; or (iii) any other legal claim arising out of the relationship between Independent Contractor and any Independent Contractor's employees or subcontractors[.]

(ECF No. 19-1 at 21–22 ¶ 14.)

vindicating his rights. The Supreme Court has held that a class action waiver in an arbitration agreement does not render such agreement substantively unconscionable, *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 238–39 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011), and that arbitration at an individual level is "adequate to assure 'effective vindication'" of one's rights. *Italian Colors*, 570 U.S. at 236–37. Bound by Supreme Court precedent, the court must reject this argument as well.

Plaintiff's final argument is that the arbitration agreement is "decidedly one-sided" because Plaintiff does not have the right to unilaterally modify the contract potentially without notice as does Lowe's. (ECF No. 16 at 21, 23.) Plaintiff further contends that it is unconscionable that "the mere acceptance of work would constitute acceptance of the unknown modifications." (*Id.* at 23.) The possibility Lowe's could modify the contract without notice to the Installers could, hypothetically, lead to unfair results. However, nothing provided by Plaintiff suggests Lowe's ever modified the arbitration agreement or even considered modifying it (or any part of the Contract, for that matter) in the seven (7) years since the Contract was executed. Plaintiff also cites no case to suggest that the power of Lowe's to unilaterally modify or the prescribed method for the Installers' acceptance of such modifications is substantively unconscionable. (*Id.*) It is Plaintiff's burden to prove unconscionability. *Tillman*, 655 S.E.2d at 369 (plurality opinion) ("[U]nconscionability is an affirmative defense, and the party asserting it has the burden of proof.") (citing *Rite Color Chem. Co. v. Velvet Textile Co.*, 411 S.E.2d 645, 649 (N.C. Ct. App. 1992)). The court finds that Plaintiff's argument, supported by no authority and based solely on a hypothetical modification, is not enough to overcome his burden to prove that the modifications clause as applied to the arbitration clause amounts to contract terms "so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept

them on the other."[6] *Brenner*, 274 S.E.2d at 210.

Thus, Plaintiff has failed to meet his burden to show that the arbitration agreement's terms are so "harsh, one-sided, and oppressive" as to be substantively unconscionable. *Wilner*, 773 S.E.2d at 337.

Considering all the facts and circumstances of this particular case, the court finds the Plaintiff has failed to show that the arbitration agreement is unconscionable.

### 3. Arbitration and Dismissal

As Plaintiff has failed to meet his burden to show the arbitration agreement is unenforceable and makes no argument that the agreement's scope does not cover the causes of action in the present case, the court finds that all of Plaintiff's claims are arbitrable. Following the Fourth Circuit's direction, the court finds dismissal is a proper remedy in this case.[7] *Choice Hotels Int'l*, 252 F.3d at 709–10.

## V.    CONCLUSION

For the foregoing reasons, the court **GRANTS** Lowe's Motion to Dismiss and to Compel Arbitration of Plaintiff's Claims. (ECF No. 9.) The case is hereby **DISMISSED WITHOUT PREJUDICE**.

---

[6] Lowe's seeks to compel arbitration pursuant to the terms of arbitration Plaintiff assented to seven (7) years ago. (ECF No. 32.) If, at some point in the future, Plaintiff's fears are realized and Lowe's were to modify the arbitration clause, Plaintiff could potentially mount a successful unconscionability challenge to that modification at that time.

[7] Dismissal is also in accordance with prior decisions from this court. *See Young v. AMISUB of S.C., Inc.*, No. 0:18-CV-1601, 2018 WL 5668619, at *6 (D.S.C. Nov. 1, 2018); *Willard v. Dollar Gen. Corp.*, No. 3:17-cv-675, 2017 WL 4551500, at *4 (D.S.C. Oct. 12, 2017); *Cox v. Assisted Living Concepts, Inc.*, No. 6:13-cv-747, at *7 (D.S.C. Mar. 18, 2014); *Fleetwood Transp. Corp. v. Packaging Corp. of Am.*, No. 6:10-cv-1219, 2002 WL 761737, at *5 (D.S.C. Mar. 8, 2012).

**IT IS SO ORDERED.**

_J. Michelle Childs_

United States District Judge

July 15, 2021
Columbia, South Carolina